AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Texas

United States Courts
Southern District of Texas
FILED
*September 04, 2020*

David J. Bradley, Clerk of Court

| United States of America | ) |
| --- | --- |
| v. | ) |
| Lola Shalewa Barbara Kasali | ) Case No. **4:20mj1644** |
| | ) |
| | ) |
| | ) |
| Defendant(s) | ) |

Sealed
Public and unofficial staff access to this instrument are prohibited by court order

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___June 2020 to the present___ in the county of ___Harris___ in the ___Southern___ District of ___Texas___, the defendant(s) violated:

| Code Section | Offense Description |
| --- | --- |
| 18 U.S.C. § 1014 | False Statements to Financial Institution |
| 18 U.S.C. § 1343 | Wire Fraud |
| 18 U.S.C. § 1344 | Bank Fraud |
| 18 U.S.C. § 1957 | Engaging in Prohibited Monetary Transactions |

This criminal complaint is based on these facts:

See attached affidavit of probable cause

☑ Continued on the attached sheet.

*Complainant's signature*

Postal Inspector Kyle Shadowens, USPIS
*Printed name and title*

Sworn to before me telephonically.

Date: September 04, 2020

*Judge's signature*

City and state:   Houston, Texas    Sam S. Sheldon, United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A COMPLAINT

I, Postal Inspector Kyle Shadowens, being first duly sworn, state:

## INTRODUCTION

1. I make this affidavit in support of a criminal complaint establishing probable cause for the arrest of Lola Shalewa Barbara KASALI for committing the following offenses in the Southern District of Texas between June 2020 and the present:

   a. 18 U.S.C. § 1014, False Statements to a Financial Institution;

   b. 18 U.S.C. § 1343, Wire Fraud;

   c. 18 U.S.C. § 1344, Bank Fraud; and

   d. 18 U.S.C. § 1957, Engaging in Prohibited Monetary Transactions.

2. As described below, there is probable cause to believe that KASALI committed the above-listed offenses in connection with a bank and wire fraud scheme targeting the Paycheck Protection Program ("PPP"), a program created to address the economic fallout of the COVID-19 pandemic by providing forgivable loans to small businesses.

## AGENT BACKGROUND

3. I am employed as a federal law enforcement officer by the United States Postal Inspection Service. I have been employed as a federal law enforcement officer since 2013, and I am currently assigned to the Financial Crimes/Mail Fraud team in the Houston Division of the United States Postal Inspection Service. I am responsible for conducting and have conducted many investigations into fraud, identity theft, and related "white collar" offenses. I have been licensed as an attorney by the State Bar of Texas since 2010, and I am a Certified Fraud Examiner. I have received training in how to investigate numerous Postal crimes, but primarily those involving

identity theft, mail fraud, wire fraud, bank fraud, and related "white collar" offenses. I am authorized to obtain and execute Federal Arrest and Search Warrants.

4. The information presented in this affidavit is based on my own personal investigation and the investigation of other law enforcement officers, which was communicated to me orally or via written communication. The facts set forth do not constitute all that has been learned in the course of the investigation but only enough to establish that probable cause exists for the issuance of a complaint and arrest warrant for KASALI.

## OVERVIEW OF THE SCHEME AND THE PAYCHECK PROTECTION PROGRAM

### *Overview of the Paycheck Protection Program*

5. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act is a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP"). In or around April 2020, up to $310 billion in additional PPP funding was authorized by Congress.

6. The PPP allows qualifying small businesses and other organizations to receive loans with a maturity of two years and an interest rate of 1%. PPP loan proceeds must be used by businesses on payroll costs, interest on mortgages, rent, and utilities. The PPP allows the interest and principal to be forgiven if businesses spend the proceeds on these expenses within a set period of time and use a certain portion of the PPP loan funds towards payroll expenses. The amount of PPP funds a business may receive is determined by the number of employees employed by the

business and their average payroll costs for a period of eight weeks. Businesses applying for a PPP loan must provide documentation showing their payroll expenses.

7. The PPP is overseen by the Small Business Administration ("SBA"). Individual PPP loans, however, are issued by private approved lenders (most commonly, banks and credit unions), who receive and process PPP applications and supporting documentation, and then make loans using their own funds. To date, over 4,900 lending institutions have participated in the PPP.

**OVERVIEW OF THE SCHEME AND IDENTIFICATION OF RELEVANT PARTIES**

*Overview of the Scheme*

8. As described in detail below, investigators believe that KASALI transmitted at least two fraudulent PPP loan applications to lenders. One of these was funded for over $1.9 million, but the loan money was not used for any purpose permitted by the PPP.

*Identification of Relevant Individuals and Entities*

9. Lola Shalewa Barbara KASALI is a resident of Houston, in the Southern District of Texas. KASALI purports to be the owner of an entity called Lola's Level, and another called Charm Hair Extensions.[1] According to the entity's website, Lola's Level is principally engaged in selling hair extensions and related products. Charm Hair Extensions is purportedly engaged in a similar line of business.

10. Lola's Level, LLC, is an entity first registered with the Texas Secretary of State on August 7, 2020. KASALI is the registered agent of Lola's Level, LLC.

11. Charm Hair Extensions purports to be an entity conducting business in Texas.

---

[1] On the PPP application and supporting documentation, the businesses are called simply "Lola's Level" and "Charm Hair Extensions." No corporate form is specified for either entity.

3

12. Bank 1 is based in Boston, Massachusetts. It is a federally insured financial institution and a member of the Federal Home Loan Bank System. Bank 1 is an approved SBA lender and has participated as a lender in the PPP. Bank 1 received a PPP loan application on behalf of Lola's Level.

13. Bank 2 is based in Lubbock, Texas. It is a federally insured financial institution and a member of the Federal Home Loan Bank System. Bank 2 is an approved SBA lender and has participated as a lender in the PPP. Bank 2 received a PPP loan application on behalf of Charm Hair Extensions.

## **PROBABLE CAUSE**

### *The Lola's Level Application to Bank 1*

14. According to information received by Bank 1, on or around June 27, 2020, a PPP loan application was submitted to Bank 1 on behalf of Lola's Level (the "Bank 1 PPP Application"). The Bank 1 PPP Application requested a PPP loan of $1,937,500.

15. The primary contact listed on the Bank 1 PPP Application is Lola KASALI.

16. Investigation has revealed that numerous statements on the Bank 1 PPP Application appear to be false and suspicious.

17. On the Bank 1 PPP Application, the applicant claims that Lola's Level has 8 employees and an average monthly payroll of $775,000. However, investigation indicates Lola's Level actually has no employees, no payroll, and no reported revenue.

18. By rule, Texas employers must submit reports of wages paid to the Texas Workforce Commission ("TWC"). Employers in Texas must also provide information about newly hired workers to the TWC within 20 days of hiring. Further, all Texas employers must

4

establish an unemployment tax account with the TWC. State law requires that employers in Texas pay unemployment tax on each eligible employee.

19. Records from the TWC indicate that Lola's Level has never reported any wages for any employee. These records also show that Lola's Level has never reported a hire, nor has Lola's Level ever paid any unemployment tax. The fact that Lola's Level has never reported any wages or any new hires to the TWC leads investigators to believe that Lola's Level has never paid any wages to anyone and has never hired an employee.

20. Furthermore, the claimed wages on the Bank 1 PPP Application are suspiciously high. The average monthly payroll—$775,000 for 8 employees—equates to average wages of $96,875 per month per employee. This translates to an average annual salary of $1,162,500 per employee.

21. Additionally, records were obtained from the Texas Comptroller of Public Accounts ("Texas Comptroller") relating to Lola's Level. The Texas Comptroller is the chief tax collector for the State of Texas and maintains information regarding franchise tax liabilities of all entities registered to conduct business in Texas. Further, Texas Comptroller records identify whether an entity reported revenue in a given year, whether an entity has the right to transact business in Texas, and whether an entity is registered with the Texas Secretary of State.

22. Texas Comptroller records reveal that KASALI registered Lola's Level, LLC, with the Texas Secretary of State on August 7, 2020. Because of this recent business formation date, Lola's Level, LLC, has not yet submitted any franchise tax information to the Texas Comptroller, nor has Lola's Level, LLC, yet reported any revenue.

23. Lola's Level does not appear to have a physical business location. The Bank 1 PPP Application lists a supposed business address on South Dairy Ashford Road in Houston, Texas.

This address corresponds to a residential apartment and is listed as KASALI's personal address on the Texas driver license submitted in support of the Bank 1 PPP Application. On Texas Comptroller documents, the mailing address for Lola's Level is listed as 9476 Highway 6 South #234, Houston, Texas 77083-6307. This is an address for a mailbox at a UPS store. The website for Lola's Level provides only a post office box.

24. The supporting documentation submitted in connection with the Bank 1 PPP Application also bears indicia of fraud.

25. The supporting documents include four 2019 IRS Forms 941, which are an employer's quarterly federal tax return for 2019. The address on these forms is the same apartment on Dairy Ashford Road listed on the Bank 1 PPP Application.

26. The four Forms 941 variously claim that Lola's Level had 5, 8, 9, and 10 employees. They also claim quarterly wages ranging between $1,453,125 and $2,906,250. However, records confirm that Lola's Level did not actually file any Forms 941 with the IRS in 2019. Furthermore, the TWC has no record of Lola's Level ever hiring an employee or paying wages to anyone.

27. These four Forms 941 are also incomplete. All four forms are unsigned, undated, and leave blank certain other necessary sections.

28. Further, the Forms 941 are completed incorrectly. For instance, the Form 941 for the first quarter of 2019 claims that Lola's Level had nine employees and paid taxable social security wages in the amount of $2,618,199.43. This cannot be correct. The maximum taxable social security wage amount was $132,900 per employee annually in 2019. Thus, if Lola's Level had nine employees, the maximum taxable social security wages for 2019 would have been

$132,900 times nine, or $1,196,100. The Form 941 in question claimed more than twice this annual maximum taxable wage amount in the first quarter of the year alone.

29. The three other Forms 941 submitted in connection with the Bank 1 PPP Application contain similar misstatements.

30. On or about July 15, 2020, Bank 1 approved the Bank 1 PPP loan in the amount of $1,937,500.

*Disbursement and Use of the PPP Loan Funds from Bank 1*

31. On July 20, 2020, the PPP loan proceeds of $1,937,500 were deposited into a JPMorgan Chase Bank account ending in 6023, in the name of Lola Shalewa Barbara Kasali DBA Lola's Level (the "6023 Account").

32. The 6023 Account does not appear to be associated with a business that has $775,000 in monthly wages. In 2019—the first full year the account was open—the balance of the 6023 Account never surpassed $2,200. For the majority of 2019, the 6023 Account had a daily balance of less than $1,000. Between January and May 2020, the balance of the 6023 Account never exceeded $3,000.

33. Bank records give no indication that payroll expenses were ever paid from the 6023 Account. Several electronic transfers were made from the account in 2019 and early 2020. The majority of these transfers were in the amount of $300 or less, and investigators believe that most of the payments were to KASALI herself.

34. Likewise, the overall account activity for the 6023 Account does not suggest that this account is connected to a multimillion-dollar business. For instance, between January and May 2020, less than $6,500 was deposited into the 6023 Account, and less than $6,800 was withdrawn from the 6023 Account.

35. On July 21, 2020—one day after the PPP funds were deposited into the 6023 Account—KASALI opened four additional bank accounts all in the name of "Lola Shalewa Barbara Kasali DBA Lola's Level." These account numbers end in 6088 (the "6088 Account"), 6096 (the "6096 Account"), 0817 (the "0817 Account"), and 0825 (the "0825 Account"). On the day they were opened, each of these accounts received a single transfer of funds from the 6023 Account. Specifically, these transfers were as follows:

   a. $250,000 was transferred from the 6023 Account to the 6088 Account;

   b. $687,000 was transferred from the 6023 Account to the 6096 Account;

   c. $500,000 was transferred from the 6023 Account to the 0817 Account; and

   d. $500,000 was transferred from the 6023 Account to the 0825 Account.

36. Evidence indicates that no additional funds were deposited into any of these four accounts after July 21, and none of the funds were withdrawn.

37. There does not appear to be any legitimate business purpose for the 6088 Account, the 6096 Account, the 0817 Account, or the 0825 Account. Records indicate that none of these accounts have been utilized for any purpose at all except to receive a single transfer each from the 6023 Account.

38. On August 25, 2020, Judge Andrew M. Edison signed seizure warrants for all of the funds in the 6088 Account, the 6096 Account, the 0817 Account, and the 0825 Account. Judge Edison also signed a seizure warrant for up to $500 in the 6023 Account. These warrants were executed, and the full loan amount of $1,937,500 has been recovered.

### *The Charm Hair Extensions PPP Application to Bank 2*

39. According to information received by Bank 2, on or around June 30, 2020, a PPP loan application was submitted to Bank 2 on behalf of Charm Hair Extensions (the "Bank 2 PPP Application"). The Bank 2 PPP Application requests a PPP loan of $1,875,944.

40. The primary contact listed on the Bank 2 PPP Application is Lola KASALI.

41. Investigation has revealed that numerous statements on the Bank 2 PPP Application appear to be false and suspicious.

42. On the Bank 2 PPP Application, the applicant claims that Charm Hair Extensions has 99 employees and an average monthly payroll of $750,378. However, as detailed below, investigation indicates Charm Hair Extensions actually has no employees, no payroll, and no reported revenue.

43. Investigation has revealed that Charm Hair Extensions is not registered with the Texas Secretary of State. The Texas Comptroller has no records at all of Charm Hair Extensions.

44. Similarly, the TWC has no records pertaining to Charm Hair Extensions. The absence of such records indicates that Charm Hair Extensions has never reported a hire, nor has Charm Hair Extensions ever paid any unemployment tax. These facts lead investigators to believe that Charm Hair Extensions has never paid any wages to anyone and has never hired an employee.

45. Charm Hair Extensions does not appear to have a physical business location. The Bank 2 PPP Application lists a business address on South Dairy Ashford Road in Houston, Texas. As mentioned in paragraph 23, above, this address corresponds to a residential apartment and is listed as KASALI's personal address on the Texas driver license submitted in support of the Bank 2 PPP Application. This is also the address listed for Lola's Level on the Bank 1 PPP Application, discussed above.

46.     The supporting documentation submitted in connection with the Bank 2 PPP Application also bears indicia of fraud.

47.     For example, the supporting documents include four 2019 IRS Forms 941 and one 2020 IRS Form 941. As mentioned above, these are an employer's quarterly federal tax returns. The address on these forms is the same apartment on Dairy Ashford Road listed on the Bank 2 PPP Application.

48.     The five Forms 941 variously claim that Charm Hair Extensions had between 96 and 99 employees. They also claim quarterly wages ranging between $2,216,569.45 and $2,277,549.47. Again, the TWC has no record of Charm Hair Extensions ever hiring an employee or paying wages to anyone.

49.     Although the five forms purportedly pertain to five different quarterly reporting periods in 2019 and 2020, they are all dated June 26, 2020.

50.     The supporting documents also include a purported IRS Form 940, which is an employer's annual federal unemployment tax return. This document lists that Charm Hair Extensions paid unemployment tax in Texas, but this is false. As mentioned above, Charm Hair Extensions has never paid unemployment tax to the TWC.

51.     Additionally, investigation indicates that Charm Hair Extensions did not have a bank account until May 6, 2020, when KASALI opened an account in the name of "Lola Kasali DBA Charm Hair Extensions." There is no indication of business expenses or payroll expenses being paid from this account.

52.     The Bank 2 PPP Application was denied.

## CONCLUSION

53.    In total, evidence indicates that KASALI received approximately $1,937,500 via her submission of a false PPP application.  The entity receiving the PPP funding does not appear to have employees or to pay wages that are in any way consistent with the representations made in the PPP application.  Additionally, evidence indicates that none of the money has been used for payroll expenses or for any other purpose authorized by the PPP.  Evidence further indicates that KASALI submitted a second PPP application in which she sought $1,875,944 on behalf on another entity that appears not to pay wages or have employees.  This second application was denied.

54.    Based on the foregoing, I submit that there is probable cause that, between June 2020 and the present, KASALI committed the crimes identified in paragraphs 1.a. through 1.d.  Therefore, I request that a criminal complaint be issued, along with a warrant for KASALI's arrest.

## REQUEST FOR SEALING

55. I further request that the Court order that all papers in support of this warrant, including the affidavit, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may give targets an opportunity to flee/continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, notify confederates, or otherwise seriously jeopardize the investigation.

Respectfully submitted,

Kyle Shadowens
United States Postal Inspector

Subscribed and sworn pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3) on the 4th day of September, 2020 and I find probable cause.

SAM S. SHELDON
UNITED STATES MAGISTRATE JUDGE