United States District Court
Southern District of Texas
**ENTERED**
August 27, 2021
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| *Plaintiff,* | § | |
| v. | § | |
| | § | |
| LOLA SHALEWA BARBARA | § | CASE NO. 4:21-CR-0054 |
| KASALI, | § | |
| | § | |
| *Defendant.* | § | |
| | § | |
| | § | |
| | § | |
| | § | |

## ORDER ON MOTION TO RECONSIDER BOND REVOCATION

Pending before the Court is Defendant Lola Kasali's motion, asking the court to reconsider its decision to revoke her bond, Order, ECF No. 56, and now seeking release based on public health concerns surrounding the COVID-19 ("COVID") pandemic. ECF No. 98.[1] The Government opposes Defendant's motion, arguing that Defendant has failed to meet her burden to demonstrate why the Court should reconsider release. ECF No. 101.

Based on a review of the motion, response, and record, the Court determines that the motion should be denied.

---

[1] COVID-19 is an infectious disease caused by a new virus that has resulted in over 600,000 deaths in the United States. *See, e.g., U.S. v. Morris*, No. 3:19-CR-573-B, 2020 WL 1694301, at *4 (N.D. Tex. Apr. 6, 2020).

## I.      BACKGROUND

Pursuant to 18 U.S.C. § 3148(b)(2)(B), the Court revoked Defendant's bond after her repeated violations of her bond conditions. Order, ECF No. 56. The facts supporting the revocation are detailed in that order. *Id.* The Court will summarize only some of the salient facts as follows:

Initially, Defendant was charged in a criminal complaint with making false statements to a financial institution, wire fraud, bank fraud, and engaging in prohibited monetary transactions, in violation of 18 U.S.C. §§ 1014, 1343, 1344, 1957. Complaint, ECF No. 1.[2]

On September 16, 2020, Defendant was arrested at the airport on her way out of the country. At her initial appearance that same day, the Court released Defendant on an unsecured bond in the amount of $10,000.00 and with conditions that included electronic monitoring. ECF Nos. 5, 6. Because of the late hour and instead of incarcerating the Defendant overnight, the Court released her on bond and instructed her to report the next day to Pretrial Services ("PTS") so that her GPS location monitor could be installed on her ankle. ECF No. 6; Order, ECF No. 56 at 1.

From the first day, Defendant violated the conditions of her release. Despite

---

[2] The grand jury charged Defendant in an indictment with two counts of making false statements to a financial institution in violation of 18 U.S.C. § 1014 and two counts of bank fraud in violation of 18 U.S.C. § 1344. Indictment, ECF No. 27. The indictment alleges that Defendant unlawfully obtained more than $3.8 million. *Id.* at 6.

the instruction from the Court, Defendant failed to report to PTS the next day to have the GPS monitor installed. When Defendant failed to report as instructed, the Government filed a motion to revoke her bond. ECF No. 9. The Court issued a warrant, and Defendant was arrested and taken into custody. ECF No. 16. PTS also filed a petition for action based on this violation. Pet., ECF No. 12. On October 1, 2020, this Court held a bond revocation hearing. Based on the argument of her counsel, however, the Court did not revoke the bond but released her after instructing Defendant on the necessity to follow the conditions of her release. Order, ECF No. 56 at 2.

Nonetheless, despite the Court's warning at the first bond revocation hearing, Defendant repeatedly continued to violate the conditions of her release. *Id.* After months of non-compliance, PTS filed a petition with the Court seeking revocation because Defendant failed to report to and follow instructions from her assigned probation officer. ECF No. 43 at 1. The Court again issued a warrant for Defendant's arrest on April 13, 2021. ECF No. 43.

On April 22, 2021, Defendant appeared for her revocation hearing. At the hearing, Defendant admitted the charges. Hrg. Tr., ECF No. 53 at 7. In addition, Defendant's probation officer testified to Defendant's uncooperative behavior since October. *Id*. at 11–27. The officer testified that Defendant refused to answer phone calls from her probation officer, used her mother as an intermediary with PTS,

tampered with her location monitoring device, failed to charge the battery of the device, claimed she had COVID to prevent in-person inspection of the monitor by PTS, and refused to provide proof of her alleged COVID infection. *Id.*; Order, ECF No. 56 at 1–4. When PTS attempted to set up virtual appointments because Defendant claimed to have COVID, Defendant refused, claiming she only had a "flip phone." Hrg. Tr., ECF No. 53 at 19.

At her initial appearance, Defendant requested to live with her father, who was supposed to act as her third-party custodian. *See* ECF No. 6. Instead, Defendant violated the conditions by living with her mother. Order, ECF No. 56 at 3. PTS instructed Defendant to have her attorney file a motion with the Court to change the third-party custodian from her father to her mother. *Id*. Defendant refused, and remained at her mother's home, continuing to knowingly violate her bond conditions. *Id*.

Following the April hearing, this Court ordered Defendant to be detained pending trial, concluding that she was unlikely to abide by any condition or combination of conditions of release. Order, ECF No. 56 at 6 (citing 18 U.S.C. § 3148(b)(2)(B)). Defendant appealed this decision to the district judge. ECF No. 58. Because the order revoking bond was thorough and well-reasoned and Defendant presented no new facts, the district judge denied Defendant's motion to revoke the detention order. Order, ECF No. 62. Without going through her counsel, Defendant

4

sent two letters to the Court, seeking to revoke the bond or obtain an *ex parte* hearing. ECF Nos. 66, 86. This Court denied the first letter motion as inappropriate contact with the court and directed her appointed counsel to address Defendant's concerns. Order ECF No. 69. After the second such letter, the district judge issued an order that all communications with the court on behalf of the Defendant may only be made through appointed counsel. Order, ECF No. 96.

Now Defendant asks this Court to reconsider its earlier decision to revoke Defendant's bond based upon COVID concerns.

## II.   LEGAL STANDARD

Defendant seeks release, citing mounting public health concerns and recent measures federal and state governments have implemented to reduce the spread of the COVID virus. Defendant claims that she has asthma, placing her at a higher risk for serious health complications if she were to contract COVID at the Federal Detention Center-Houston ("FDC"), particularly because she is not vaccinated. ECF No. 98 at 1 - 2. Defendant has failed to cite to any case or statutory provision in support of her motion. Thus, the legal basis for Defendant's motion is ambiguous.

There are two statutory provisions that could provide a basis for the relief sought under the Bail Reform Act, 18 U.S.C. § 3142(f)(2)(B) or § 3142(i).[3]   The

---

[3] Noting the lack of any statutory reference in the motion, the Government opposed release under both provisions. ECF No. 101 at 4–5.

Bail Reform Act provides in relevant part that:

> [t]he [detention] hearing may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required....

*Id.* § 3142(f)(2)(B). Since the Government agreed to Defendant's release on bond at her initial appearance, she never had a detention hearing. Therefore, this provision does not seem to apply.[4]

Alternatively, the court may temporarily release a detained defendant to the custody of an "appropriate person, to the extent that [the court] determines such release to be necessary for the preparation of the person's defense or for another compelling reason." *Id.* § 3142(i). The Court will analyze Defendant's motion under both provisions.

### A. Defendant Has Not Met Her Burden to Reconsider Release under 18 U.S.C. § 3142(f)(2).

Under § 3142(f)(2), a defendant may request a detention hearing to reconsider the issue of pre-trial detention. The Fifth Circuit has interpreted this standard as

---

[4] The Court notes that even when a Defendant has waived his right to a detention hearing, he may seek reconsideration under this provision. *Compare* Order, ECF No. 39 at 4, *United States v. Sixto Gonzalez-Rodriguez*, No. 4:19-cr-847 (S.D. Tex. Aug. 13, 2021) (analyzing motion for release under§ 3142(f)(2) when defendant sought release after waiving his detention hearing), *with United States v. Sanmiguel,* No. 3:19-CR-630-B, 2020 WL 3036636, at *2 (N.D. Tex. Jun. 5, 2020) (holding that when there was no detention hearing, the issue of temporary release is more appropriately addressed under § 3142(i)).

requiring *new* information that was not known at the time of the hearing. *U. S. v. Stanford*, 367 F. App'x 507, 509–10 (5th Cir. 2010) (citing *U.S. v. Hare,* 873 F.2d 796, 799 (5th Cir. 1989) (finding testimony concerning Defendant's character does not constitute new evidence)). Accordingly, Defendant bears the burden of providing new material information bearing on conditions of release that warrants a detention hearing. *Id.* at 510.

Based on her unsubstantiated and conclusory claim that she has asthma and the general concerns about the risk of contracting COVID, Defendant asks the Court to convene a detention hearing to allow the Court to consider releasing her to the custody of her father. ECF No. 98 at 2-3. However, the state of the COVID pandemic and Defendant's concerns of heightened COVID risks in prison do not factor into the appropriate conditions of a defendant's release under § 3142(f)(2). *Sanmiguel,* 2020 WL 3036636, at *2 (collecting cases). Therefore, Defendant's unsupported claim that she is at higher risk to contract COVID at the FDC fails to meet the burden of presenting new information pertaining to Defendant's release.

The Court previously determined that no condition or combination of conditions of release would ensure Defendant's presence at trial, which the district judge affirmed. Order, ECF No. 56 at 6; Order, ECF No. 62 Defendant has not presented any evidence to convince the Court otherwise.

Accordingly, under 18 U.S.C. § 3142(f)(2), Defendant's motion is denied.

7

## B. Defendant Has Not Provided a "Compelling Reason" to Be Temporarily Released Pursuant to 18 U.S.C. § 3142(i).

Most courts have analyzed defendants' pleas for release due to COVID under § 3142(i), requiring a "compelling reason." *U.S. v. Slaughter*, ---F.Supp.3d---, No. 3:18-cr-00027, 2020 WL 1685117, at *6 (S.D. Tex. Apr. 6, 2020) (finding that defendant's COVID concerns alone did not constitute sufficient reason to grant temporary release under § 3142(i)). Under this provision, a defendant bears the burden of establishing the compelling reason and that release is necessary. *Id.* at *6.

Courts have been mindful of the unprecedented magnitude of the COVID pandemic and the serious health risks presented; yet a defendant is not entitled to temporary release under § 3142(i) based solely on generalized COVID fears and speculation. *Id.* at *7 (denying release when defendant's motion was not specific to his case); *U.S. v. Kerr*, No. 3:19-cr-296-L, 2020 WL 1529180, at *3 (N.D. Tex. Mar. 31, 2020) ("the court cannot release every detainee who may be at risk of contracting COVID-19, as it would then be required to release all detainees."). Courts facing this issue have instead looked to the specificity of the defendant's concerns to make an individualized determination as to whether temporary release is warranted. *United States v. Wright,* No. 3:18-cr-635-N, 2020 WL1694298, at *4 (N.D. Tex. Apr. 7, 2020) (collecting cases). Typically, courts have granted relief under § 3142(i) sparingly and in extreme circumstances, "such as where the defendant is suffering from a terminal illness or serious injuries." *Wright*, 2020 WL1694298, at *4 (citing

8

*U.S. v. Hamilton*, No. 19-CR-54-01, 2020 WL 1323036, at *2 (E.D. N.Y. Mar 20, 2020) (permitting release of defendant suffering from terminal AIDS that could no longer be managed by correctional authorities due to the pandemic)).

The court in *Slaughter* adopted a four-factor analysis to consider whether the defendant met his burden to show a "compelling reason" for temporary release: (1) the original grounds for the defendant's pretrial detention; (2) the specificity of the defendant's stated COVID-19 concerns; (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID risks to the defendant; and (4) the likelihood that the defendant's proposed release would increase COVID risks to others. 2020 WL 1685117, at *2 (citing *U.S. v. Clark*, ---F.Supp.3d---, 2020 WL 1446895 (D. Kan. Mar. 25, 2020)). The factors are not weighed equally but considered collectively to guide the court's determination whether a "compelling reason" exists justifying temporary release as "necessary." *Id*.

The Court applies the four-factor test to determine whether Defendant has met her burden of establishing a compelling reason necessitating temporary release.

> *a. Defendant's bond was revoked because no condition or combination of conditions would assure her appearance.*

As stated above and in more detail in the Court's revocation order, based on Defendant's repeated failures to comply with the bond conditions and refusals to meet with her probation officer, this Court determined that no condition or combination of conditions would reasonably assure the Defendant's appearance as

9

required. Order, ECF No. 56 (citing 18 U.S.C. § 3148(b)(2)(B)).

In her motion, Defendant does not address the Court's concerns regarding her previous behavior in a release plan. Defendant merely asserts that she should be released on bond to her father's house to prevent her from contracting the virus and allowing her to meet with counsel face-to-face. Defendant has not shown any circumstances that would assure Defendant's appearance or Defendant's compliance with conditions of release.

No information has been presented whether Defendant's father is willing or able to serve as a third-party custodian. *See Slaughter,* 2020 WL 1685117, at *6 (court assumed the mother or grandmother would consent to this responsibility but found it only slightly favors temporary release).  Based on his past statement to the Court when Defendant failed to appear for installation of her ankle monitor that she would not be appearing at PTS office because she did not need a GPS monitor, the Court has reservations. *See* ECF No. 56 at 2. Considering Defendant's past refusal to reside with her father as required in her bond at her request, her tampering with the location monitoring device, her refusal to be supervised, her claim of having COVID, her use of her mother as an intermediary with PTS, and her mother's obvious inability to supervise Defendant, the Court does not believe that conditions exist that would assure Defendant's appearance if she were to be temporarily released.

Accordingly, Defendant's past behavior weighs in favor of continued detention.

>    b. *Defendant presented no proof or specificity for her stated COVID concerns.*

Defendant is required to establish significant circumstances warranting temporary release in her case. The only argument Defendant makes to distinguish her case from generalized speculation is that she has not received a COVID vaccine, and she allegedly suffers from asthma. ECF No. 98 at 2. The Government represented to the Court that the FDC is offering vaccinations to all inmates, ECF No. 101 at 9; therefore, Defendant's unvaccinated status is voluntary on her part. *See Slaughter,* 2020 WL 1685117, at *7 ("[Defendant's] position, while regrettable, is of [her] own making.").

While courts have acknowledged that asthma may result in an individual's increased risk of developing a serious COVID illness,[5] the CDC states that the risk is only increased if the asthma is moderate to severe.[6] Plaintiff has failed to provide any proof to support her claim that she suffers from asthma, thus it is without any

---

[5] *See U.S. v. Stern*, 465 F.Supp.3d 699, 702 (S.D. Tex. 2020) (acknowledging that asthma may increase the risk of developing severe COVID symptoms but denying Defendant's request for release prior to sentencing); *Sanmiguel*, 2020 WL 3036636, at *3, n. 1 (noting that persons with underlying illnesses the CDC identified may have a higher risk of developing severe symptoms from COVID, including asthma).

[6] *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html, last visited on 8/26/2021.

factual support. She does not indicate how long she has had it, how severe it is, what her symptoms are, whether she has reported this condition to the FDC, whether a doctor there has treated or failed to treat her condition, or whether the procedures the FDC has in place are effective or ineffective with respect to her condition. *See Sanmiguel*, 2020 WL 3036636, at *3.

Without evidence supporting her assertion, this Court cannot find that Defendant's motion musters more than generalized speculation about COVID. *Id.* Courts have hesitated to release defendants unless the specific circumstances absolutely necessitate release. *Id.* (denying temporary release despite defendant's underlying medical conditions when she did not allege that she was being detained near someone diagnosed with COVID, was exposed to anyone diagnosed with it, or allege how measures in place at the detention facility were insufficient).

Because Defendant has not demonstrated how her claim specifically warrants temporary release, this factor weighs in favor of denying Defendant's motion.

> c. *Defendant did not provide a proposed release plan to address the Court's concerns or mitigate COVID risks.*

Defendant has not provided a release plan to demonstrate that she would comply with conditions or that temporary release would mitigate COVID risks. Defendant merely proffers that placing her on bond would prevent her from becoming a potential carrier who could in turn infect staff members at the detention center and further spread the virus to others with the outside community. ECF No. 98

at 3. Defendant provided no plan as to how residing with her father would reduce the risk of her exposure to COVID. Although the Court can guess that living at her father's would involve less exposure to others than the FDC, there is no information as to where he lives, who else lives there, or what his contacts are with others. She has not shown how living with him will result in her compliance with bond conditions she repeatedly violated in the past.

Thus, Defendant has not met her burden to show that temporary release is beneficial in this case, so this factor weighs against release.

> ### d. *Temporarily releasing Defendant would increase COVID risks to others.*

Finally, temporarily releasing Defendant before trial imposes a significant COVID risk to the community. Supervising Defendant while on bond would impose a heightened risk of contracting the COVID virus to PTS. Defendant previously refused phone calls or to schedule virtual meetings from her probation officer. If Defendant were released, PTS agents would risk their health and safety to conduct in-person appointments necessary to monitor her. *See Slaughter,* 2020 WL 1685117, at *6 (stating that it is appropriate to consider if the release plan would increase COVID risks to others, particularly if the defendant is likely to violate conditions of release).

Considering the four factors, Defendant has not met her burden to show that a "compelling reason" exists such that temporary release is "necessary" pursuant to

§ 3142(i).

### C. Defendant Has Not Demonstrated that Preparing Her Defense Requires Temporary Release.

While most courts have interpreted COVID requests for release under § 3142(i) as a "compelling reason," some courts have considered these motions in view of Defendant's ability to prepare a defense. *See U.S. v. Galvan*, No. 3:20-cr-00019, 2020 WL 4604502, at *7 (S.D. Tex. Aug. 11, 2020) (denying Defendant's motion for temporary release on the grounds that it is not necessary for Defendant's ability to prepare a defense). As the court explained in *Galvan*, the inquiry under § 3142(i) is not whether pretrial release will *assist* in the preparation of the defendant's defense, but whether it is *necessary* for the preparation of that defense. *Id.* (emphasis in original).

Defendant alleges that placing her on bond would "allow counsel to have face-to-face meeting[s] with [Defendant] to go over discovery matters at her home or at counsel's office." ECF No. 98 at 3. However, Defendant does not argue or present any proof that such release is necessary for the ability to present a defense. Mere convenience does not meet the burden of proof necessary for temporary release under § 3142(i). *Galvan*, 2020 WL 4604502, at *7. Accordingly, Defendant's motion is denied for this reason as well.

III.    CONCLUSION

Therefore, it is **ORDERED** that Defendant's motion to reconsider the Court's order revoking her bond, ECF No. 98, is **DENIED**.

Signed on August 26, 2021, at Houston, Texas.

**Dena Hanovice Palermo**
**United States Magistrate Judge**