United States District Court
Southern District of Texas

**ENTERED**
June 09, 2026
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LOLA KASALI, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CRIMINAL ACTION NO. H-21-54 |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Defendant. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

The Court has carefully considered Magistrate Judge Palermo's Report and Recommendation ("Report and Recommendation") (Docket Entry No. 464), dated April 23, 2026, Defendant's Objections to the Magistrate Judge's Report and Recommendation on Supervised Release Revocation and Recommended Sentence at DE 464 ("Defendant's Objections") (Docket Entry No. 484), and the Government's Response to Defense Objections to the Magistrate Judge's Report and Recommendation (DE 464) ("Government's Response") (Docket Entry No. 489).  For the reasons stated below, Kasali's objections to Magistrate Judge Palermo's recommendation that the court find she violated the terms of her supervised release will be overruled, and Kasali's objections to Magistrate Judge Palermo's recommendations that her term of supervised release be revoked that she be sentenced to three years imprisonment will be denied as moot because the court will conduct a hearing at which it will determine an appropriate remedy for Kasali's violations.

1

## I.  <u>BACKGROUND</u>

Pending before the court are the United States Probation Office's Petitions for Warrant or Summons for Offender Under Supervision and Supplements to the Petition for Warrant or Summons for Person Under Supervision dated October 28, 2025, December 9, 2025, and December 11, 2025 (Docket Entry Nos. 396, 413, and 414). On December 1, 2025, the court entered an Order of Referral (Docket Entry No. 411) referring the supervised release petition (Docket Entry No. 396), and all pending motions and related matters to Magistrate Judge Palermo.  The petitions allege seven Grade C violations:

    (1)  Failure to pay restitution as directed;

    (2)  Failure to follow U.S. Probation Officer's instructions;

    (3)  Failure to participate in mental health treatment;

    (4)  Failure to permit a U.S. Probation Officer to visit at home or elsewhere;

    (5)  Failure to pay special assessment fee as directed;

    (6)  Incurring new credit charges without approval of the Probation Officer; and

    (7)  Incurring or opening additional lines of credit without approval of the Probation Officer.[1]

The Probation Officer recommended that Defendant's supervision be revoked.[2]

---

[1]Report and Recommendation, Docket Entry No. 464, p. 7 (citing Docket Entry Nos. 396, 413, and 414).  Page numbers for docket entries refer to the pagination inserted at the top of the page by the court's electronic filing system.

[2]<u>Id.</u> at 10 (citing Docket Entry No. 414, p. 4).

At a revocation hearing held on March 4 and 9, 2026, the Defendant did not plead true to any of the charges, but the Government stated that the fifth charge of failure to pay the special assessment was moot because Defendant paid it.[3]  The Government called two witnesses to support the remaining charges: United States Probation Officer Azuree Jackson, and United States Postal Inspector Kyle Shadowence.[4]  At the close of the hearing, the United States Probation Office recommended a sentence of three (3) years imprisonment, with no term of supervised release following release.[5]  The Government agreed with the Probation Office's recommendation.  Kasali opposed the recommended sentence and asked the court to allow her to remain on supervised release but to assign her a different Probation Officer and require her to obtain mental health treatment.[6]  Magistrate Judge Palermo recommends that the court find Kasali violated the terms of her supervised release by committing violations one, two, three, four, six, and seven; that Kasali's term of supervised release be revoked, and she be sentenced to three (3) years imprisonment, to be served concurrently for all violations, with credit for time served in federal custody; and with no supervised release following her release from prison.[7]

---

[3]Id.

[4]Id.

[5]Id. at 21.

[6]Id.

[7]Id. at 21-22.

## II. <u>STANDARD OF REVIEW</u>

District courts review <u>de novo</u> those portions of a Magistrate Judge's Report and Recommendation to which timely objections are filed.  28 U.S.C. § 636(b)(1)(C); Fed. R. Crim. P. 59(b)(3).  <u>See also</u> <u>United States v. Wilson</u>, 864 F.2d 1219, 1222 (5th Cir.) (per curiam), <u>cert. denied</u>, 109 S. Ct. 3243 (1989) (recognizing that <u>de novo</u> review requires an independent "determination based upon the record . . . unrestrained by the findings and conclusion of the magistrate").  The district court judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).  <u>See also</u> Fed. R. Crim. P. 59(b)(3) ("The district judge may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions.").

## III. <u>ANALYSIS</u>

Kasali objects to Magistrate Judge Palermo's recommendation that her supervised release be revoked based on Grade C technical violations and argues that the court should decline to adopt the sentencing recommendation because

> [e]ven if this Honorable Court accepts as accurate the factual findings in the magistrate Judge's Recommendation that this Honorable Court impose the statutory maximum term of 36months' imprisonment on a defendant — appearing on revocation for the first time — for exclusively Grade C technical violations, is both substantively and procedurally unreasonable.[8]

---

[8]Defendant's Objections, Docket Entry No. 484, pp. 2-3.

4

**A.    Magistrate Judge Palermo's Recommended Finding that Kasali Violated the Terms of Her Supervised Release Will be Adopted**

Asserting that "[t]he record is replete with evidence that Defendant has refused to allow her P[robation] O[fficer] to supervise her,"[9] Magistrate Judge Palermo recommends that the court find Kasali violated the terms of her supervised release by committing violations one, two, three, four, six, and seven.[10] For the reasons stated below the court will overrule Kasali's objections to the factual findings in Magistrate Judge Palermo's Report and Recommendation, and adopt the recommended findings.

### 1.    Failure to Pay Restitution as Directed

Without disputing that she has failed to pay restitution as directed, Kasali argues that Magistrate Judge Palermo's recommended finding that she "refused to pay restitution as ordered,"[11] mischaracterizes that violation by "leading with the original judgment amount of $2,027,686.64 and Defendant's failure to make monthly payments,"[12] because "[o]n July 28, 2025, the Government applied a credit of $1,937,500.00 from seized funds to Ms. Kasali's restitution balance . . . [making t]he remaining balance at the time of the final revocation hearing . . . $90,186.64 — less than

---

[9]Report and Recommendation, Docket Entry No. 464, p. 17.

[10]Id. at 17-19, and 21.

[11]Id. at 18.  See also id. at 10-11.

[12]Defendant's Objections, Docket Entry No. 484, p. 6.

five percent of the original judgment."[13] Asserting that "[t]he magnitude of an unpaid restitution balance is directly relevant to assessing the willfulness and seriousness of the violation,"[14] Kasali argues the Report and Recommendation fails to recognize that

> [a] defendant who has had nearly $2 million seized and applied to her restitution obligation, leaving a balance of $90,186.64, and who is on supervised release with no full-time employment income, is in a materially different position than a defendant who has paid nothing against an intact $2 million judgment.[15]

Kasali's argument that the Report and Recommendation mischaracterizes the restitution violation is not supported by the record. The second sentence of the paragraph addressing the restitution violation states that "[a]fter a credit of $1,937,500.00 from funds that were seized, Defendant owed a balance of $90,186.64."[16] The Report and Recommendation states that the Probation Officer testified that although Kasali should have paid $300.00 per month, she not only failed to make any payment, she repeatedly said that she did not owe the money and that she would not make any payments.[17] Kasali does not dispute the truth of the Probation Officer's testimony on this issue. Kasali's objection to Magistrate Judge Palermo's recommended finding that she refused to pay restitution as ordered is **OVERRULED**.

---

[13]Id. at 6-7.

[14]Id. at 7.

[15]Id.

[16]Report and Recommendation, Docket Entry No. 464, p. 11.

[17]Id.

2.   Failure to Follow Probation Officer's Instructions

Kasali objects to Magistrate Judge Palermo's recommended finding that she failed to follow her Probation Officer's instructions regarding employment because the Report and Recommendation fails to account for the Probation Officer's testimony during cross-examination "that had she known . . . Ms. Kasali was a student, the full-time employment condition would have been waived."[18]  Observing that the Report and Recommendation

> acknowledges that before the Second Superseding Petition was filed, Ms. Kasali had not informed her Probation Officer that she was enrolled at the University of Houston, and that after the petition was filed, she represented that she was in school but did not provide supporting documentation,[19]

Kasali argues that

> if [she] was, in fact, a full-time student . . . then the employment component of Violation 2 reflects a communication failure and a documentation gap more than a willful refusal to comply.  This Court should find, or, at a minimum, should adopt a finding that the record on this violation is materially ambiguous.[20]

But missing from the record is any evidence that Kasali was, in fact, a full-time student.  Kasali's objection to Magistrate Judge Palermo's recommended finding that she failed to follow the probation officer's instructions regarding employment is **OVERRULED**.

---

[18]Defendant's Objections, Docket Entry No. 484, pp. 7-8.

[19]Id. at 8.

[20]Id.

### 3.   <u>Failure to Participate in Mental Health Treatment</u>

Asserting that she did not impede the mental health treatment assessment, Kasali argues that she "appeared to her appointments as requested and answered questions to some extent."[21]  The Report and Recommendation states that the Probation Officer testified that although Kasali went to two mental health appointments, she did not participate sufficiently for the therapists to be able to fully assess her.[22]  Acknowledging that "[t]here were some subjects that [she] declined to comment on," Kasali argues that she "never expressed unwillingness to return to the program," and that "she had not been provided with any follow-up appointments to continue the process."[23]  Because Kasali acknowledges that although the went to her appointments, she declined to comment on some subjects, Kasali's objection to Magistrate Judge Palermo's recommended finding that she failed to participate in mental health treatment is **OVERRULED**.

### 4.   <u>Failure to Permit Probation Officer Visits</u>

Without disputing the Probation Officer's testimony regarding multiple failed attempts to complete unscheduled home visits with her, Kasali argues that the Report and Recommendation

---

[21]<u>Id.</u> at 9.

[22]Report and Recommendation, Docket Entry No. 464, p. 12.

[23]Defendant's Objections, Docket Entry No. 484, p. 9.

mischaracterizes her noncompliance by failing to recognize that her "conditions of supervision do not have a movement restriction component[, and, therefore,] the notion that [she] is violating her conditions of supervised release by not being present at her dwelling during USPO Jackson's unannounced visits cannot stand."[24] Acknowledging that "[t]he announced visits present a different scenario," Kasali argues that "[t]he Probation Office was able to conduct all but one of her announced visits; in particular, on June 25, 2025.    The rest of the visits transpired, albeit with controversy, but in compliance with the conditions set forth in her supervised release terms."[25]  Because Kasali acknowledges both that the Probation Officer was unable to conduct one scheduled visit, and that although the other scheduled visits transpired, they transpired with controversy, Kasali's objection to Magistrate Judge Palermo's recommended finding that she failed to permit Probation Officer home visits is **OVERRULED**.

6.    Incurring New Credit Charges Without Approval

Kasali argues that the Report and Recommendation over represents the alleged credit violations, but does not dispute that she "obtained a credit card from Synchrony Bank — Amazon with a credit limit of $150.00 [without her Probation Officer's

---

[24]Id. at 6.

[25]Id.

9

approval]."[26]  Asserting that the Report and Recommendation does not note the $150.00 credit limit,[27] Kasali argues that "[t]his Court should adopt a finding that accurately reflects the de minimis nature of the Synchrony account in assessing the weight of Violation[] 6 . . ."[28]  Kasali's contention that the Report and Recommendation does not accurately reflect the de minimis nature of the Synchrony account is not supported by the record.  The second sentence of the paragraph addressing the credit violations states that "[i]n December 2025, the probation office conducted a credit check and discovered that Defendant had obtained a credit card from Synchrony Bank — Amazon with a credit limit of $150.00."[29]  Because Kasali does not dispute that she did not have permission to open the Synchrony Bank account, Kasali's objection to Magistrate Judge Palermo's recommended finding that she incurred new credit charges without approval is **OVERRULED.**

   7.   Incurring or Opening Additional Lines of Credit Without Approval

The Report and Recommendation states that in addition to the Synchrony Bank credit card,

---

[26]Id. at 8.

[27]Id.

[28]Id. at 9.

[29]Report and Recommendation, Docket Entry No. 464, p. 9.

10

probation discovered that Defendant had obtained at least eight student loans from the Department of Education, totaling $19,048.00.  She did not have permission to obtain these loans.  She never informed her Probation Officer that she was a student.[30]

Without disputing that she obtained at least eight student loans from the Department of Education without permission from her Probation Officer, Kasali argues that

> the communication difficulties with her Probation Officer . . . led to a misunderstanding of what financial actions she is barred from engaging on without authorization. Specifically USPO Jackson was not aware if Ms. Kasali received money from those student loans, or, instead, if the monies went directly to the educational institutions to furnish payment for enrollment and materials.  As a result, Ms. Kasali believed that she was not engaging in financial obligations when securing loans that were not paid directly to her, but to the schools she was enrolled in.[31]

Missing from the record is any supporting evidence showing either that the loan proceeds went directly to the schools and not to Kasali, or that Kasali was enrolled in school when she obtained the loans.  Because Kasali does not dispute that she obtained at least eight student loans from the Department of Education, and that she did not obtain her Probation Officer's permission to secure those loans, Kasali's objection to Magistrate Judge Palermo's recommended finding that she incurred additional lines of credit without approval is **OVERRULED.**

---

[30]Id.

[31]Defendant's Objections, Docket Entry No. 484, p. 9.

**B.**  **Magistrate Judge Palermo's Recommendation that Kasali's Supervised Release be Revoked and that She be Sentenced to Three Years Imprisonment Will be Denied as Moot because the Court Will Hold a Hearing to Determine an Appropriate Remedy**

Kasali objects to Magistrate Judge Palermo's recommended sentence of three (3) years imprisonment to be followed by no term of supervised release as procedurally and substantively unreasonable.  Kasali argues that the three-year imprisonment recommendation is procedurally unreasonable because it fails to consider Amendment 835 to the United States Sentencing Guidelines, which took effect on November 1, 2025, and rewrote Chapter 7's supervised release provisions.[32]  Kasali argues that

> [u]nder [the] new § 7C1.3, the Commission established an explicit, graduated framework for revocation decisions: Grade A violations (new crimes of violence, firearms, drug trafficking): revocation "generally appropriate." Grade B violations (other felonies): revocation "often appropriate."  Grade C violations (misdemeanors and technical noncompliance): revocation "may be appropriate" — the lowest tier, explicitly discretionary.[33]

Kasali argues that the Report and Recommendation neither acknowledges this framework, nor "explain[s] why, under the tiered standard, revocation and imprisonment at the statutory maximum are the appropriate responses to [her] specific violations . . . at this time."[34]  Asserting that 18 U.S.C. §§ 3553(a)(5) and 3583(e) require the court to consider applicable policy statements, Kasali

---

[32] Id. at 10.

[33] Id. at 10-11.

[34] Id. at 11.

argues that Amendment 835's absence from the Report and Recommendation "is a procedural error that this Court should correct in adopting its own findings on sentence."[35]

Kasali argues that Magistrate Judge Palermo's recommended sentence of three (3) years is substantively unreasonable because it is grossly above the recommended guidelines sentence of three (3) to nine (9) months for Grade C violations,[36] and because Fifth Circuit decisions upholding statutory maximum sentences that are grossly above the guidelines range involve new criminal conduct or multiple prior violations; i.e., circumstances that do not exist in this case.[37]

Kasali cites Esteras v. United States, 145 S. Ct. 2031, 2041 (2025), in which the Supreme Court held that supervised release

> "is not a punishment in lieu of incarceration." . . . Rather it "fulfills rehabilitative ends" and "provides individuals with postconfinement assistance." . . . So when a defendant violates the conditions of his supervised release, it makes sense that a court must consider the forward-looking ends of sentencing (deterrence, incapacitation, and rehabilitation), but may not consider the backward-looking purpose of retribution,[38]

Kasali argues that the Report and Recommendation's

---

[35]Id. at 12.

[36]See USSG § 7C1.5.

[37]Defendant's Objections, Docket Entry No. 484, pp. 14-26 (citing cases).

[38]Id. at 1-2 (internal citations omitted).

extended recitation of Ms. Kasali's noncompliant behavior — during pretrial supervision years before the violations at issue, during the Faretta hearing, during interactions with her Probation Officer — raises a substantial question about whether the recommended sentence is an exercise in permissible forward-looking sentencing or an impermissible exercise in punishment for who Ms. Kasali has been throughout this case. Esteras forbids the latter, and this Court should ensure the sentence it ultimately imposes is grounded exclusively in permissible, forward-looking § 3553(a) factors.[39]

Finally, Kasali argues that the absence of any term of supervised release following imprisonment requires independent justification that the Report and Recommendation does not provide.[40] Kasali explains that

> [e]liminating the remaining supervision term entirely means that when [she] is released she will receive no transitional support, no monitoring, and no structured assistance with reintegration. Given that the violations at issue arose from Ms. Kasali's difficulties navigating the supervisory relationship, the appropriate response may well be to restructure that relationship — a different probation officer, clearer expectations, targeted mental health treatment — rather than to eliminate supervision entirely after extracting the maximum prison term. The [Report and Recommendation] offers no explanation for why the elimination of all post-release supervision serves the permissible sentencing goals applicable here. This Court should decline to adopt that recommendation and should instead impose an appropriate term of supervised release following any period of imprisonment.[41]

Magistrate Judge Palermo's Report and Recommendation correctly states that "[t]he record is replete with evidence that Defendant

---

[39]Id. at 24.

[40]Id. at 26-27.

[41]Id. at 27.

has refused to allow her P[robation] O[fficer] to supervise her,"[42] cites cases supporting the recommendation to revoke Kasali's supervision, and cites the standards for crafting an appropriate sentence.[43]  Since, however, Federal Rule of Criminal Procedure 32.1(b)(2)(E) and (c)(1) entitle Kasali to a hearing at which she is able to make a statement and present any information in mitigation, the court will hold a hearing to determine the appropriate remedy for Kasali's violations.

## IV.  <u>CONCLUSIONS AND ORDER</u>

For the reasons stated above in § III.B, Kasali's objections to the sentencing recommendations in Magistrate Judge Palermo's Report and Recommendation are **DENIED as MOOT.**

For the reasons stated above in § III.A, Kasali's other objections to Magistrate Judge Palermo's Report and Recommendation (Docket Entry No. 464) are **OVERRULED.**  The court, therefore, **ADOPTS** Magistrate Judge Palermo's Report and Recommendation, and finds that Kasali has violated the terms of her supervised release.

The court will conduct a hearing as to the appropriate remedy for Kasali's violations on Thursday, July 9, 2026, at 11:00 a.m. The court will not permit argument or evidence from Kasali or either counsel as to the correctness of any of the court's rulings.

---

[42]Report and Recommendation, Docket Entry No. 464, p. 17.

[43]<u>Id.</u> at 20.

The sole purpose of the hearing is for the court to determine an appropriate remedy for the violations established by the court's adoption of Magistrate Judge Palermo's Report and Recommendation.

**SIGNED** at Houston, Texas, this 9th day of June, 2026.

_____
SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE

16